O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **JAMES LAMB,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of the**<br>**Social Security Administration,**<br><br>**Defendant.** | ) | **NO. EDCV 07-397-MAN**<br><br>**MEMORANDUM OPINION**<br><br>**AND ORDER** |

Plaintiff filed a Complaint on April 16, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income ("SSI"). On May 14, 2007, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on January 3, 2008, in which: plaintiff seeks an order reversing the Commissioner's decision and directing the immediate payment of benefits or, in the alternative, remanding the matter for a new administrative hearing and awarding plaintiff costs and reasonable attorneys' fees; and defendant seeks an order affirming the Commissioner's decision. The Court has taken the

parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff claims to have been disabled since July 2, 1998, due to a seizure disorder and neck pain. (Administrative Record ("A.R.") 18, 59.) He has past relevant work experience as a construction worker, laborer, vehicle cleaner, and cleaner. (A.R. 18, 60.)

Plaintiff filed his application for SSI on April 30, 2004. (A.R. 17.) The Commissioner denied plaintiff's claim initially and upon reconsideration. On April 4, 2006, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Dietterle ("ALJ"). (A.R. 254-90.) On April 24, 2006, the ALJ denied plaintiff's claim. (A.R. 17-21.) The Appeals Council subsequently denied plaintiff's request for review of that decision. (A.R. 7.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff's seizure disorder is "severe" but does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (A.R. 20.) The ALJ further found that plaintiff's allegations regarding his limitations are "not totally credible." (A.R. 21.) Based on the testimony of a vocational expert, and finding that plaintiff has the residual functional capacity to perform medium work with no unprotected heights, no dangerous or fast moving machinery, and no open pools of water, the ALJ concluded that plaintiff can perform his past relevant work. (*Id.*) Accordingly, the

ALJ found that plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Sec'y., 44 F.3d 1453, 1457 (9th Cir. 1995).

## DISCUSSION

Plaintiff alleges the following three issues: (1) whether the ALJ erred in failing to consider the lay witness testimony; (2) whether the ALJ erred in failing to make proper credibility findings; and (3) whether the ALJ erred in failing to consider the type, dosage, effectiveness, and side effects of plaintiff's medications. The Court addresses these issues and one other below.

### I. **The Record Must Be Further Developed Regarding Plaintiff's Seizure Disorder.**

It is axiomatic that the ALJ has an affirmative duty to investigate all issues and develop a record to make a fair determination as to disability, regardless of whether the claimant is represented by an attorney. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(citations omitted). This includes, *inter alia*, the duty to compile all the relevant facts upon which the ultimate adjudication of disability ultimately rests. *See* Miles v. Chater, 84 F.3d 1397, 1401 (2d Cir. 1996)(The ALJ is "duty-bound to develop a full and fair record . . . giving individualized consideration to each claim that comes before him."). The ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Tonapetyan, 242 F.3d at 1150.

The ALJ's finding that plaintiff "had been taking his medication only intermittently" is supported by substantial evidence in the record. (A.R. 18.) As the ALJ noted, plaintiff told his doctors on several

occasions that he had not been taking his seizure medication as prescribed. However, the ALJ's conclusion, that plaintiff's "seizure disorder is actually well controlled when [plaintiff] is compliant with prescribed treatment," is not clearly supported by any medical opinion of record and thus, it appears to rest on the ALJ's improper interjection of his own medical judgment. (A.R. 19.) *See* Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record).

At the hearing, the medical expert opined that plaintiff's seizures did not seem like "typical epileptic seizure[s]" and may instead be "psychogenic seizures."[1] (A.R. 278.) When asked whether a psychogenic seizure would be treated with Tegretol or Depakote, the medications prescribed to plaintiff, the medical expert replied: "[s]ometimes it . . . takes a combination of medications for that. First of all, it has to be diagnosed. And I don't see where it was thought about here or, or mentioned as a possibility." (A.R. 279.) Critically, the medical

[1] Psychogenic seizures are:

> seizures that do not have a physical cause. They can be caused by stress, injury, emotional trauma, or mental illness. Psychogenic seizures are not caused by epilepsy. But people with epilepsy may have psychogenic seizures. It is important to distinguish psychogenic seizures from epilepsy, because the risks may outweigh any benefit of treating psychogenic seizures with antiepileptic medicines. Psychogenic seizures are not caused by abnormal electrical activity in the brain. A person having a psychogenic seizure will not have the typical electroencephalogram (EEG) findings of an epileptic seizure.

Monica Rhodes, Psychogenic Seizures, WebMD, last updated October 29, 2007, http://www.webMD.com. Critically, in this case, plaintiff's seizures began after he sustained a head trauma in a motor vehicle accident. (A.R. 232, 236.)

expert testified that:

> [**y]ou really don’t have a good diagnosis yet.** So, you really don’t know what you’re dealing with and as a lack of frequency makes it less problematic. However, the fact that it can occur anytime means that you want the person protected against it. But you’re kind of up in the air. **You, you just don’t know what you’re dealing with here. The documentation is inadequate.**

(A.R. 280-81; emphasis added.) Although the medical expert’s testimony raised issues regarding inadequate documentation, the ALJ relied upon a portion of the medical expert’s testimony to support his disability determination.[2] *See* Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998)(it is impermissible for an ALJ to develop an evidentiary basis by “not fully accounting for the context of materials or all parts of the testimony and reports”).

Plaintiff did undergo an internal medicine consultative

---

[2] In setting forth the medical expert’s opinion, the ALJ simply stated:

> At the hearing, medical expert Joselyn Baily, M.D., testified regarding [plaintiff’s] medical condition. After a thorough review of all the evidence, Dr. Bailey found [plaintiff] had a seizure disorder, but that he did not have an impairment or combination of impairments which met or equaled any listing in Appendix 1 to Subpart P of Regulations No. 4. She further concluded that based on her review of all the evidence, [plaintiff] was able to perform a full range of medium work with normal seizure precautions including no unprotected heights, no dangerous or fast moving machinery, and no open pools of water.

(A.R. 19.)

examination, but he was not examined by a neurologist, whose expertise might be more appropriate for assessment of a severe seizure disorder. Moreover, given that the medical expert questioned whether plaintiff's seizures are psychogenic rather than epileptic, it may be necessary to refer plaintiff for a psychiatric consultative examination.[3]

Accordingly, the ALJ should order the appropriate testing and/or examination(s) to determine whether factors other than plaintiff's intermittent failure to take medication contribute to plaintiff's seizures and, more importantly, whether plaintiff's seizures would be controlled even if he consistently took medication as prescribed. 20 C.F.R. § 416.917 (when a claimant's medical sources provide insufficient evidence in order to determine whether the claimant is disabled, a consultative examination may be ordered); 20 C.F.R. § 416.919k (Commissioner may order the purchase of "psychiatric and psychological examinations, X-rays and laboratory tests (including specialized tests, such as pulmonary function studies, electrocardiograms, and stress tests) from a medical source.").

///

///

[3] Indeed, at the hearing, the medical expert testified that, if plaintiff's seizures are not epileptic in nature, then "there's nothing wrong with the blood so, you really aren't going to see any real brain thing on, on an MRI . . . ." (A.R. 278.) Despite plaintiff's seizure activity, but in line with the medical expert's theory, plaintiff's past MRI and EEG results were normal. (A.R. 157, 208, 233-34.) Thus, the etiology of plaintiff's seizure activity remains unclear and deserves further inquiry.

**II. The ALJ Failed To Set Forth Appropriate Reasons For Disregarding The Observations Of Plaintiff's Sister Regarding Plaintiff's Seizure Activity.**

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider observations of the claimant reported by lay witnesses. *See* Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. § 404.1513(e)(2) ("[o]bservations by non-medical sources . . . may also help us to understand how your impairment affects your ability to work"). "[T]he ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

The Commissioner attempts to excuse the ALJ's failure to discuss the testimony of plaintiff's sister, Betty Busby, by providing two rationales: (1) Ms. Busby's testimony was cumulative; and (2) the ALJ's failure to discuss Ms. Busby's testimony was harmless error. (Joint Stip. at 5-6.) As discussed below, the ALJ should have provided appropriate reasons for rejecting Ms. Busby's testimony, and his failure to do so constitutes error.

First, Ms. Busby's testimony regarding her observations of plaintiff's 2001 seizure was not cumulative, because she provided specific details regarding the nature and extent of plaintiff's seizure

activity, as well as his post-seizure limitations.[4] Ms Busby's testimony is significant to plaintiff's disability determination, because it sheds light on the seriousness of plaintiff's seizure activity and the extent to which his seizures affect his ability to engage in full-time work. At the hearing, Ms. Busby testified that she witnessed plaintiff "in total convulsions. His entire body was involved. He fell to the floor and it went so long, . . . it just kept going and going and going." (A.R. 285.) She saw plaintiff seize for ten minutes, fall down the stairs, and remain unconscious for at least 20 minutes more. (A.R. 286-87.) After the seizure, plaintiff slept for hours, and the following day appeared "groggy," was "a little slower responding to things . . ., [and] his memory [didn't] seem to be quite right." (A.R. 289.) Ms. Busby's testimony was competent evidence regarding plaintiff's seizure activity and his post-seizure limitations, and her testimony should not have been disregarded without comment.[5] *See* Smolen, 80 F.3d at 1288.

Second, the Commissioner argues that the ALJ's failure to discuss Ms. Busby's testimony was harmless error. The Commissioner's argument is unpersuasive. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing

---

[4] In support of his position that Ms. Busby's testimony merely confirms the existence of plaintiff's seizure activity, the Commissioner argues that "[p]laintiff's 2003 seizure is already adequately documented in the medical record. His sister's testimony merely confirms what is already in the record." (Joint Stip. at 5-6.) However, the seizure Ms. Busby witnessed and described at the hearing occurred in 2001, not 2003. The details of plaintiff's 2001 seizure are not adequately documented in the record.

[5] Indeed, at the hearing, the medical expert testified that she did not "see a lot of verification of the kinds of events that happened during the seizure -- witnessing. And [she] think[s] that the record does require that the seizures be witnessed." (A.R. 276.)

court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, 454 F.3d 1050, 1056 (9th Cir. 2006). The Court finds that the rigorous standard imposed by Stout is not met here, and therefore, the ALJ's failure to address the testimony of plaintiff's sister cannot simply be dismissed as harmless error.

On remand, the ALJ must provide proper reasons, if they exist, for rejecting the testimony of plaintiff's sister regarding the nature and extent of plaintiff's seizure activity and his post-seizure limitations, in order that a reviewing court may know the basis for the ALJ's decision and have the ability to assess the propriety of that decision.

**III. The ALJ Failed To Provide The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Testimony Regarding His Subjective Pain And The Side Effects Of His Medications.**

Once a disability claimant produces evidence of an underlying physical impairment that is reasonably likely to be the source of his subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 2001)(*en banc*); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). Moreover, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."

Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). Further, the ALJ's credibility findings must be "sufficiently specific" to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa, 367 F.3d at 885.

Further, when an ALJ evaluates a claimant's limitations, he must consider evidence regarding the side effects of medications. Social Security Ruling 96-7p requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." *See also* 20 C.F.R. § 416.929(c)(3)(iv). The Ninth Circuit has observed that "the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process. Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1988). Like pain, side effects can be a "highly idiosyncratic phenomenon," and a claimant's testimony as to their limiting effects should not be trivialized. *Id.*

The ALJ's stated reasons for rejecting plaintiff's testimony regarding the severity of his seizure activity and post-seizure limitations are not supported by substantial evidence in the record. The ALJ's assertion that plaintiff "has not established a medically determinable impairment which would reasonably be expected to produce such limitations" is flatly incorrect. (A.R. 19.) The medical record is replete with evidence of reports and clinical treatment notes regarding plaintiff's seizure activity that fully corroborate plaintiff's allegations. (See, *e.g.*, A.R. 102-112, 165-169, 197-199,

209-211, 220, 224, 227-230, 232, 249-252.)

In addition, the ALJ relied on his conclusion that plaintiff's "seizure disorder is actually well controlled when [plaintiff] is compliant with prescribed treatment," as a basis upon which to discount plaintiff's subjective testimony. (A.R. 19.) As discussed above, this conclusion is not clearly supported by substantial evidence and must be re-evaluated on remand after the record is further developed.

Finally, the ALJ improperly dismissed plaintiff's testimony regarding the side effects of his medications, concluding that there was "no evidence in the medical record of any significant side effects." (A.R. 19.) This conclusion mischaracterizes the record with respect to Depakote and is somewhat misleading with respect to Tegretol. In fact, there is evidence in the medical record that plaintiff complained to his physician (A.R. 249), as well as testified at the hearing, that Depakote keeps him awake and causes him to have an upset stomach and diarrhea (A.R. 273). These complained of Depakote side effects are recognized by and consistent with the medical data regarding this drug. *See, e.g.,* PHYSICIAN'S DESK REFERENCE, p. 417 (62d ed. 2008). Indeed, these Depakote side effects apparently led to plaintiff's medication being switched from Depakote to Tegretol. (A.R. 249.) At the hearing, plaintiff testified that Tegretol makes him sleepy and causes him to have blurred vision. (A.R. 270, 273.) Plaintiff's complained of Tegretol side effects are also consistent with the medical data regarding this drug. *See, e.g.,* Patient Handout for Tegretol Oral, WebMD, http://www.webmd.com. At the hearing on April 4, 2006, plaintiff plainly testified that he had "only been taking [Tegretol] for a couple

of week[s]."[6] (Joint Stip. at 14; A.R. 273.) It is therefore, hardly surprising that, as of the hearing date, there was "no evidence in the medical record" of complaints by plaintiff to his physician regarding the side effects of the Tegretol so recently prescribed to him.

Accordingly, as plaintiff's complaints regarding his subjective limitations and medication side effects may have a significant impact on his ability to engage in full-time work, the ALJ erred in failing to set forth clear and convincing reasons for discounting them.

**IV. <u>Remand Is Required</u>.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy to allow the ALJ the

---

[6] Plaintiff was prescribed Tegretol on March 20, 2006. (A.R. 273.)

opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 21, 2008

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE